IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| COREY R. SANDERS, #225 939, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-329-MHT |
| | ) | [WO] |
| SANDRA GILES, WARDEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, an inmate incarcerated at the Limestone Correctional Facility in Harvest, Alabama, files this *pro se* 42 U.S.C. § 1983 action claiming Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they failed to protect him from an inmate assault during his incarceration at the Bullock Correctional Facility.[1] Named as Defendants are Warden Sandra Giles, Lieutenant Gwendolyn Davis, and Sergeant Susie Jackson. Plaintiff requests trial by jury and seeks declaratory relief, damages, and costs. Doc. # 1.

Defendants filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. # 13. In this filing, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Id.* Upon receipt of Defendants' special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials

---

[1] Although Plaintiff also references the Fourth and Fourteenth Amendments regarding his failure to protect claim, a review of his allegations reflects this claim is properly analyzed solely under the Eighth Amendment.

as a motion for summary judgment." Doc. # 14 at 2. Plaintiff responded to Defendants' report, *see* Doc. # 15, but his response does not demonstrate there is any genuine issue of material fact. *See* Doc. # 14 at 2. The court will treat Defendants' report as a motion for summary judgment, and resolve this motion in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go

beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A.  Absolute Immunity

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its

Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.   Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**B.  Injunctive and/or Declaratory Relief**

Plaintiff's request for declaratory and/or injunctive relief against Defendants is due to be dismissed as moot. Plaintiff is no longer incarcerated at the Bullock Correctional Facility.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Bullock Correctional Facility, his request for equitable relief is moot.

**C. Deliberate Indifference**

**1. Failure to Protect**

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable

4

measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. The Eleventh Circuit has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*), quoting *Farmer*, 511 U.S. at 844. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533,1537 (11th Cir. 1990) (citations omitted); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy). An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991); *overruled in part on other grounds by Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).

5

Plaintiff has the burden of showing that a defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Based on the foregoing, to survive summary judgment on his failure to protect claim, Plaintiff must present "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale*, 50 F.3d at 582.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff alleges Defendants acted with deliberate indifference to his safety when inmate Willie Heidelberg ("Heidelberg") attacked him on March 18, 2013. On this date at approximately 7:00 p.m. Heidelberg cut Plaintiff's face with a box cutter. Plaintiff, who was lying on his bed at the time of the attack, claims the attack occurred because Heidelberg felt he had been disrespected by Plaintiff's act of hanging clothes on the end of the bunk the two inmates shared. To prevent further injuries, Plaintiff defended himself from Heidelberg's aggression. Despite informing the arresting officer he was defending himself from Heidelberg's attack, Plaintiff complains he received a disciplinary. He refused to sign the disciplinary on the ground that his actions constituted self-defense against Heidelberg's conduct. Plaintiff further maintains Heidelberg should not have been housed in general population because of his numerous mental health issues for which he was being medicated. Doc. # 1 at 6.

Defendants' evidence includes affidavits from Lt. Davis, Warden Giles, and Officer Jackson, an incident report, disciplinary records, a body chart, and other prison records. These documents reflect that on March 18, 2013, Plaintiff returned from working out and threw his dirty, sweat-soaked clothes on Heidelberg's bed. Plaintiff's conduct amounted to an ongoing effort to intimidate and harass Heidelberg into seeking another bed assignment which would give Plaintiff the opportunity to request Heidelberg's lower bunk. After Plaintiff threw his dirty clothes on Heidelberg's bed, the two inmates argued. Plaintiff struck Heidelberg and then grabbed him by his shirt and attempted to drag him to the back of the dorm out of the view of security. An inmate friend of Plaintiff's got behind Heidelberg to prevent him from escaping from Plaintiff at which time Heidelberg defended himself by striking Plaintiff with an object he had been using to cut onions for his soup.[2]   Inmates who witnessed the incident confirmed Heidelberg's account of events with Plaintiff. Doc. # 13, Exh. A, D, E.

Following the incident, Plaintiff was taken to the infirmary for treatment of his injuries and subsequently placed in a segregation cell pending disciplinary action. Correctional officials placed Heidelberg in a segregation cell in the mental health unit due to a lack of cell space in the regular segregation unit and to also keep the two inmates separated. At his disciplinary proceeding for fighting without a weapon Plaintiff entered a plea of guilty and was sanctioned to a loss of privileges and placement in disciplinary segregation for thirty days.  Doc. # 13, Exhs. A-F.

In contrast to Plaintiff's assertion in the complaint he was lying on his bed at the time of the incident, Plaintiff indicates in his opposition he returned to his living area from recreation at which time Heidelberg asked him to remove his laundry bag from the head of the bed. When Plaintiff told Heidelberg he would have to talk to the Warden about placement of the laundry bag,

---

[2] Defendants' evidence references the weapon used to cut Plaintiff as both a homemade knife and a razor. Doc. # 13, Exhs. A, D.

Plaintiff claims Heidelberg said "fuck that," pushed Plaintiff, and removed his clothes from the bed.  Plaintiff then hit Heidelberg who fell against a wall, "bounced back," and then cut Plaintiff's face with a box cutter. Plaintiff further maintains "he is not capable of pressuring another inmate to give up his bed without prison official intervention" as correctional officials are responsible for entering bed assignments in the computer to ensure their validity.[3] Doc. # 15 at 1 and Sanders Affidavit.

Any factual disputes about what started the violence between the two inmates is not material.  There is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by Heidelberg to Plaintiff prior to the attack as is necessary to establish deliberate indifference.  *Marsh*, 268 F.3d at 1028-1029. While Plaintiff alleges Heidelberg has a violent prison record which put Defendants on notice that an attack was possible and claims the inmate was being medicated for mental health issues, absent is evidence Defendants actually knew of any risk to Plaintiff from Heidelberg. *Carter*, 352 F.3d at 1349, 1350 ("[T]here must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."); *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). The unrefuted evidence reflects Heidelberg was not on the mental health caseload, he had no documented mental health issues, and was assigned to a dorm in the main camp based on his classification which was exactly the same classification as Plaintiff's. Moreover, there is no indication from the pleadings and evidence before the court that Plaintiff at any time identified

---

[3] While prison officials are tasked with the responsibility of actually making inmate bed assignments and entering such information in the prison's computer system, it is equally obvious inmates can and do exert pressure in myriad ways over one another to jockey for position and power among the incarcerated.

Heidelberg as an enemy or that any defendant or other correctional personnel knew of any prior run-ins or problems between the two inmates. The record is devoid of evidence Plaintiff informed any Defendant he feared a risk of attack by Heidelberg. It was only after the incident about which Plaintiff complains that the Enemy Validation Committee met and validated the two inmates as enemies. Doc. No. 13, Exhs. A, D, E, G.

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by Heidelberg. *Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005) (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Johnson v. Boyd*, 568 Fed. App'x 719, 722 (11th Cir. 2014) (complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Murphy v. Turpin*, 159 Fed. App'x 945, 948 (11th Cir. 2005) ("[B]ecause [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."). Because Plaintiff has failed to show that Defendants actually knew a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well, and summary judgment is due to be granted in Defendants' favor on Plaintiff's failure-to-protect claim.

## 2. Failure to Intervene

Plaintiff claims security issues existed in the dorm where the incident occurred which impaired the ability of Defendants to protect him from assault by other inmates so they could have intervened and prevented his injuries. The security issues cited by Plaintiff-lack of personal space, the constant threat of violence, visibility issues in the dorm, the availability of potentially dangerous weapons, the many inmates housed at Bullock with mental health issues, and overcrowding-are, without more, insufficient to demonstrate that any defendant was in a position to intervene regarding the challenged action.  *See* Doc. # 13, Exhs. A, D, E. Liability attaches only if a defendant was actually in a position to intervene. *See Terry*, 376 Fed. App'x at 896 (*citing Ensley*, 142 F.3d at 1407). The undisputed evidence reflects that none of the named defendants were present in Plaintiff's dorm when the March 18, 2013, incident occurred.  Thus, Plaintiff's failure-to-intervene claim fails because he bears the burden of demonstrating Defendants were "physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'  *Glispy v. Raymond*, 2009 WL 2762636 (S.D. Fla., Aug. 28, 2009) (*citing Ensley*, 142 F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986))." *Seals v. Marcus*, 2013 WL 656873, at *7 (M.D. Ga. 2013);  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)); *see also Ledlow*, 500 Fed. App'x at 914. Because Plaintiff fails to allege Defendants were even in a position to intervene and to act in time to stop Heidelberg's attack on him, summary judgment is due to be granted in Defendants' favor on Plaintiff's failure-to-intervene claim.[4]

---

[4] Plaintiff's failure-to-intervene claim is addressed in accordance with various panel opinions of the Eleventh Circuit that rely on *Ensley* to dispose of this type of claim. The court is aware that the Eleventh Circuit in *Johnson* noted "[w]hile it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates." 568 Fed. App'x at 722 n.2.

### D.  Respondeat Superior

To the extent Plaintiff seeks to hold Defendants liable based on their supervisory positions, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or on the basis of vicarious liability. *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691-95   (1978)   (doctrine of *respondeat superior* is inapplicable to § 1983 actions);  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability); *see also  Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."). Thus, Defendants are liable for the challenged conduct of their subordinates only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation[s]."  *Cottone*, 326 F.3d at 1360 (citation omitted).

Defendants were not present when Plaintiff was assaulted by Heidelberg.  Thus, these defendants may be held liable only if their actions bear a causal relationship to the purported violation of Plaintiff' constitutional rights.  To establish the requisite causal connection and avoid entry of summary judgment in favor of these defendants, Plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed]

in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Defendants as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).   A thorough review of the pleadings and evidentiary materials submitted demonstrates Plaintiff has failed to meet this burden.

Plaintiff has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants failed to take corrective action.   While Plaintiff generally contends "conditions are so obvious that [Defendants] must have purposefully ignored them for the needs of budgeting" (Doc. # 1 at 8), he presents no evidence-substantially probative or otherwise-that the attack by Heidelberg occurred pursuant to any policy enacted by these Defendants or due to any deficiency in security. Finally, there is no probative evidence to support an inference that Defendants directed any subordinate officer to act unlawfully or knew that they would act unlawfully and failed to prevent their conduct. Defendants were not personally involved in the alleged constitutional deprivation, and Plaintiff has not shown there is any causal connection between their actions and the alleged constitutional deprivation. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting a complaint does not satisfy Fed.R.Civ.P. 8 or Fed.R.Civ.P. 12(b)(6) if it only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). For these reasons, Defendants' motion for summary judgment on Plaintiff's *respondeat superior* claim is due to be granted.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Doc. # 13) be GRANTED;

2.  This case be DISMISSED with prejudice;

3.  Judgment be ENTERED in favor of Defendants;

4.  Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before June 30, 2016**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 16th day of June, 2016

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

13